Jonathan Mazer
Partner

212 344-5400
jmazer@schlamstone.com

**SCHLAM STONE & DOLAN LLP**

26 Broadway, New York, NY 10004
Main: 212 344-5400   Fax: 212 344-7677
schlamstone.com

December 11, 2020

BY ECF
Judge Edgardo Ramos
40 Foley Square
New York, NY 10007

**MEMO ENDORSED**

RE:   *A & R Real Estate, Inc. v. Dorian New York LLC et al, 1:20-CV-06976*

Dear Judge Ramos:

    This firm represents the plaintiff in the above-referenced action for breach of a lease agreement. This letter is a request for a pre-motion conference and to submit a summary judgment motion. Defendants have no defense to this action and their counterclaims are meritless. Plaintiff asks that discovery be stayed pending decision on the motion.
    This is an action for failure to pay rent due under a 10-year lease entered into prior to the COVID-19 pandemic. That the parties entered into such a lease, that the security deposit was paid, that Tenant never paid any rent pursuant to terms of the lease and that it vacated prior to the end of this term are undisputed. Amended Answer and Counterclaims at ¶¶ 4 and 5 of the Counterclaims. All material facts in this matter are undisputed and the defendants' attempt to manufacture a factual issue about whether tenants took possession is unavailing.
    Not only did they take possession of the subject space, pursuant to paragraph 60(B) of the lease they also displayed a sign at the space with their name visible to the public — putting the world on notice of their possession. Photographs of the sign are attached hereto as Exhibit 1 and the lease is attached as Exhibit 2. The sign proves possession. *1644 Broadway LLC v. Jimenez*, 2016 NY Slip Op 26157, ¶ 11, 51 Misc. 3d 887, 904, 31 N.Y.S.3d 812, 825 (2016, Civ. Ct.) ("It is the opinion of this court that the bank had actual knowledge that the deli was in possession because its rights to possession were open and quite apparent since its name was clearly displayed on the exterior awning of the property.").

    **I-**    **Affirmative Defenses are Meritless**

    The affirmative defenses asserted are in conclusory form, lack particulars and consist primarily of boilerplate with no application to the instant facts. No particulars of any breach of the lease which would negate the obligation to pay rent is alleged in the Fourth Affirmative Defense itself, although it is claimed elsewhere that the plaintiff failed to perform certain alterations. But the alleged breach is irrelevant since the lease provides at paragraph 26 that: "[T]he obligation of Tenant to pay rent hereunder . . . shall in no way be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease . . . or is delayed in making, any repair, additions, alterations or decorations . . . if Owner is prevented or delayed from so doing by . . . government preemption or restrictions, or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency, or by reason of the conditions of which have been or are affected, either directly or indirectly, by war or other emergency" Exhibit 2 at ¶26.

Failure to mitigate is not a defense to an action to collect rent due under a commercial lease because there is no such duty. (Sixth Affirmative Defense) *Mitchell & Titus Assocs., Inc. v. Mesh Realty Corp.*, 160 A.D.2d 465, 554 N.Y.S.2d 136, 137 (1st Dept. 1990) ("[I]n a commercial lease the lessor is not under a duty to mitigate damages").

The doctrines of impossibility, impracticability and frustration of purpose, which are also the basis for the counterclaims, are inapplicable for the reasons discussed below. (Seventh Affirmative Defense). Under paragraph 26 of the lease, these doctrines are no basis for a defense or counterclaim, so the defense of offset is likewise inapplicable (Eight Affirmative Defense).

The remaining affirmative defenses (First - Failure to State a Claim; Second - Waiver, Estoppel and Latches; Third - Unclean Hands; Fifth - Plaintiff Suffered No Loss) have no connection to facts or posture of this case which was brought promptly in which plaintiff states a breach of lease and damage by failure to pay rent. Since unclean hands is an equitable defense, it does not apply here nor is any factual basis for it alleged. The so-called Ninth Affirmative Defense asserts no defense but expresses the hope that one will be somehow found.

**II-     Counterclaims are Meritless**

  **A. Frustration of Purpose is Not Applicable**

The First Counterclaim seeks rescission based on supposed frustration of purpose of the lease. In *Metro Life Ins. Co.*, the court explained that a claim of frustration of purpose has three elements: "First, the purpose that is frustrated must have been a principal purpose of that party in making the contract . . . The object must be so completely the basis of the contract that . . . without it the transaction would make little sense. Second, the frustration must be substantial. It is not enough that the transaction has become less profitable for the affected party or even that he will sustain a loss. The frustration must be so severe that it is not fairly to be regarded as within the risks that he assumed under the contract. Third, the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made." *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp. 1504, 1523 (S.D.N.Y. 1989) (citing Restatement (Second) of Contracts, 265 comment a (1981).)

Here, the parties entered into a 10-year lease, the purpose of which was for the tenant to use the space to operate a retail business selling high-end furniture and related items, and for administrative offices. Exhibit 2 at ₱42(A). There was a temporary prohibition on using the space for those purposes due to government actions. Within months, the restrictions were lifted or modified, and the business could operate. *See Dr. Smood N.Y. LLC v. Orchard Hous., LLC*, 2020 N.Y. Misc. LEXIS 10087, at *6 (Sup. Ct. N.Y. Cty. Nov. 2, 2020) (Shutdown orders did not excuse café's obligation to pay rent under frustration of purpose doctrine, since "'partial frustration . . .is insufficient to establish the defense as a matter of law,'" and café "remain[ed] open for both counter service and pickup of orders submitted online") (citation omitted).

Moreover, the possibility of a government regulation making it impossible for the Owner to provide a space in which the tenant could operate such a business was indeed contemplated by the lease: "This lease and the obligation of Tenant to pay rent hereunder . . . . shall in no way be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease . . . if Owner is prevented or delayed from so doing by reason of  . . government preemption or restrictions  . . .or by reason of any rule, order or regulation of any department of subdivision thereof of any government agency, or by reason of the conditions of which have been or are affected, either directly or indirectly, by war or other emergency." Exhibit 2 at ₱26. The doctrine of frustration of purpose provides no basis to rescind the lease and this counterclaim is meritless.

### B. Impossibility is Not Applicable In Light of Lease Language

The Second Counterclaim seeks rescission based in impossibility of performance. In *Blakal Hospitality Group*, Justice Freed rejected the a claim of impossibility arising out of COVID-19 restrictions imposed in March of 2020 based on the language of the lease. *Backal Hosp. Grp. LLC et al. v. 627 W. 42nd Retail LLC*, 2020 N.Y. Misc. LEXIS 4050, at *11-12 (Sup. Ct. Aug. 3, 2020) (denying injunction). Here, the lease likewise contemplates continued payment of rent even if tenant cannot use the space as it hoped for some period of time for reason including the specific example of the inability being due to a "order of any department or subdivision . . . of any government agency" or directly in directly related to some "war or other emergency" Exhibit 2 at ₱26. Thus, the lease specifically prohibits the instant claim that because COVID-19 related restrictions made it impossible for Owner to provide a space which could be used for the retail purposes that Tenant intended, it is excused from payment of the rent. Tenant took on the risk of such a government restriction and cannot not avoid it by claiming impossibility.

Even if it is conceded that the restrictions imposed as a result of the pandemic caused reduced defendant revenue for some period, impossibility, which was expressly contemplated in the contract, still would not apply. *GE v. Metals Res. Grp. Ltd.*, 293 A.D.2d 417, 418, 741 N.Y.S.2d 218, 220 (1st Dept. 2002) ("Nor were defendant's contract obligations excusable as impossible to perform. Defendant's performance may have been rendered financially disadvantageous . . . [but that] . . . is not a basis for reliance upon the impossibility of performance doctrine"). The Second Counterclaim seeking rescission based on supposed impossibility is meritless.

### C. There is no Basis for Reformation of the Lease or Guarantee

The Third Counterclaim seeks reformation of the lease and guarantee but states no basis for it. "The proponent of reformation must 'show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties'" *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 574, 498 N.Y.S.2d 344, 347 (1986). Here, Tenant does not allege any facts indicating fraud or mutual mistake, nor does Tenant claim or have any basis to claim that the lease or guarantee is other than the agreement the parties intended. There is no basis for reformation of the lease or guarantee and this counterclaim must be dismissed.

### D. Tenant Is Not Entitled To Return Of The Security Deposit

In its Fourth Counterclaim, Tenant does not assert a specific claim but merely seeks return of its security deposit, supposedly because there are grounds for rescission (based on the other Counterclaims) or that Tenant never took possession. Based on the foregoing, these assertions must be rejected and this counterclaim for return of the security deposit dismissed.

### III- Conclusion

For the forgoing reasons, the Court should permit plaintiff to move for summary judgment and stay discovery pending decision on that motion.

Very truly yours,

*[signature]*

Jonathan Mazer

> There is an initial conference in this matter set for December 17, 2021 at 11:45am. The parties may discuss Plaintiff-Counterdefendant's proposed motion at that time. Defendants-Counterclaimants may also submit a written response to the arguments raised in this letter in advance of the conference. IT IS SO ORDERED.
>
> _____
> Edgardo Ramos, U.S.D.J
> Dated: 12/14/2020
> New York, New York

3