UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

A&R REAL ESTATE, INC.,

                Plaintiff,

– against –

DORIAN NEW YORK LLC *and*
DORYA USA, LLC,

                Defendants.

**OPINION & ORDER**

20-cv-06976 (ER)

RAMOS, D.J.:

    A&R Real Estate, Inc. ("A&R") brought this action against Dorian New York LLC ("Dorian") and Dorya USA, LLC ("Dorya," and together with Dorian "Defendants"), alleging claims for breach of contract and enforcement of guaranty, and seeking declaratory judgment for unpaid rent and other fees under a lease and a guaranty on a commercial space located at 105 Madison Avenue in New York City (the "Premises"). Doc. 1-1 at ¶¶ 2, 6, 15–44. The Court previously ruled Dorian and Dorya are liable to A&R for damages under the lease for breach of contract and the guaranty for enforcement, respectively. Doc. 54. Before the Court is A&R's motion for summary judgment on damages. Doc. 61. For the reasons stated below, A&R's motion is GRANTED in part and DENIED in part.

**I.    BACKGROUND[1]**

    **A. Factual Background**

    *1. The Lease and Guaranty*

    On January 6, 2020, A&R, the owner of the Premises, executed a lease with Dorian (the "Lease"), pursuant to which A&R agreed to lease Dorian the Premises for ten years and four months. Doc. 38-1 at 28; Doc. 1-1 at ¶¶ 2, 6. The Lease included a base rent that started at $480,000 per year (or $40,000 per month), rising annually until it

---

[1] The following facts are drawn from the parties' Rule 56.1 statements, Docs. 65, 70, 72, supporting exhibits, and pleadings, and are undisputed unless noted otherwise.

reached $701,493.65 per year (or $58,457.80 per month). Doc. 38-1 at 9. A&R and Dorian also signed a Rider Annexed to the Lease, executed simultaneously to the Lease (the "Lease Rider"). Doc. 38-2.

On December 30, 2019, Dorya executed a separate "good guy guaranty"[2] of the Lease (the "Guaranty"), guaranteeing Dorian's rent payments and the fulfillment of its Lease obligations. Doc. 38-4.

2. *The Commencement Date*

The Lease Rider provides that the "Commencement Date" would be either January 1, 2020, or whenever possession was tendered to Dorian, whichever came later. Doc. 38-2 at ¶ 44(A). On the Commencement Date, Dorian would be required to deliver to A&R a $260,000 security deposit. *Id.* at ¶ 56(A). A&R executed the Lease on January 6, 2020. Doc. 46 at 6–7 ¶ 25. On January 6 and 21, 2020, respectively, Dorian paid A&R (1) $40,000 for the first month's rent and $120,000 as the cash portion of the security deposit and (2) $140,000 as the balance of the security deposit. Doc. 46 at 6–7 ¶¶ 24, 26–27; Doc. 72 at 1 ¶¶ 1–2. The Court previously determined that the Commencement Date was January 21, 2020. Doc. 54 at 12–15.

3. *The Vacate Date*

On April 30, 2020, Dorian's attorney sent a letter (the "April 30 Letter") to A&R, informing A&R: "Because of the COVID-19 Pandemic, [Dorian] is unable to proceed with the Lease and is surrendering possession in the event [Dorian] ever, in fact, had legal possession of the subject space." Doc. 38-18 at 2; Doc. 72 at 1–2 ¶3. The April 30 Letter explicitly stated that:

> [I]n an abundance of caution, Dorya is hereby providing written notice …, that the time period for the "Vacate Date" … should commence … today in light of the fact that: [(a)] [Dorian] never moved anything into the space nor made any alterations …, [(b)]

---

[2] A "good guy guaranty" is a guaranty that "effectively eliminates the liability of the guarantor upon a tenant's surrender of the leased property." *Ninth & 414 E. 74th Associates LLC v. Hundalani*, No. 21-cv-5314 (VM), 2023 WL 4472162, at *3 (S.D.N.Y. July 11, 2023).

2

> [Dorian] has lawfully surrendered … possession…, [(c)] [Dorian] only temporarily used the keys for a few visits and then were returned, and [(d)] this letter shall serve as Dorya's 90 day advance written notice as required.

Doc. 38-18 at 2–3. This Court found that the April 30 Letter triggered the ninety-day notice provision in the Guaranty and that pursuant to the Guaranty, the Vacate Date was July 29, 2020. Doc 54 at 19–20. However, A&R continues to dispute the Vacate Date.[3] Doc. 62 at 12–18.

### 4. Moroso Lease

A&R subsequently entered into a 10-year lease with Moroso Madison LLC ("Moroso"), effective August 1, 2021.[4] Doc. 64-3; *see also* Doc. 70 at 1–2 ¶ 3. The rent payable by Moroso was lower than that due under the Lease by Dorian. *See* Doc. 64-4. A&R also incurred a brokerage commission, in the amount of $151,270.75, on reletting the Premises to Moroso. Doc. 70 at 2 ¶ 7.

### 5. Damages against Dorian

The Lease includes various provisions relevant to the determination of damages in the event of breach or default by Dorian. Article 18[5] of the Lease provides that A&R is entitled to recover general damages, including rent and brokerage fees, from Dorian:

> In case of any such default [by Dorian] ... (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such [default], (b) [A&R] may [re]let the demised premises … for a term or terms, which may at [A&R]'s option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease … and/or (c) [Dorian] … shall also pay to [A&R], as liquidated damages, for the failure of [Dorian] to observe and perform said [Dorian]'s covenants … , any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the lease … of the demised premises for each month of the period which would

---

[3] A&R argues that the Vacate Date is August 1, 2021, the effective date of the lease with Moroso Madison LLC, the subsequent tenant of the Premises. Doc. 62 at 14.

[4] The lease with Moroso includes the Premises leased to Dorian and also includes space on the second floor of the building where the Premises is located. Doc. 64 at 4 ¶ 11.

[5] A&R uses "Article" and "Paragraph" in reference to the numbered sections of the Lease while Defendants only use "Paragraph." For consistency, the Court will refer to the numbered sections as "Articles."

3

> otherwise have constituted the balance of the term of this lease …. In computing such liquidated damages there shall be added to the said deficiency such expenses as [A&R] may incur in connection with [re]letting, such as … brokerage[.]

Doc. 38-1 at 4.

Additionally, Article 19 of the Lease provides that A&R is entitled to recover reasonable attorneys' fees from Dorian for breach of the Lease:[6]

> If [A&R] ... in connection with any default by [Dorian] in the covenant to pay rent … makes any expenditures or incurs any obligations for the payment of money, including … reasonable attorneys' fees, in instituting, prosecuting[,] or defending any action or proceeding, and prevails in any such action or proceeding, [then Dorian will reimburse A&R for] such sums so paid[,] or obligations incurred, with interest and costs.

Id.

Article 47 of the Lease provides that A&R is entitled to recover damages for the electrical charges due from Dorian:

> [Dorian] shall pay to [A&R], as additional rent, the sum of (a) the actual out-of-pocket cost of [A&R] to supply electric current to the Demised Premises plus (b) ten (10%) percent of [A&R]'s actual cost.

Id. at 16.

Article 65 of the Lease provides that A&R is entitled to recover interest on any amount due under the Lease from Dorian, in relevant part:

> 1. In every case in which [Dorian] is required by the terms of this Lease to pay to [A&R] a sum of money as fixed rent, additional rent, or otherwise and payment is not made within ten (10) days after written notice that the same shall become due, interest shall accrue and be payable on such sum or so much thereof as shall be unpaid from the date it becomes due until it is paid. Such interest shall be at an annual rate which shall be two (2) percentage points above the prime commercial lending rate of Citibank, N.A., charged to its customers …. 2. In addition[,] ... [Dorian] shall pay [A&R] a late charge of $250.00 to cover the extra expense involved in handling such delinquency.

---

[6] A&R argues that Dorian and Dorya are independently responsible for all of A&R's attorneys fees. Doc. 71 at 13–14.

4

*Id.* at 26.

> Lastly, Article 31 of the Lease addresses the security deposit:
>
>> [A&R] may use, apply[,] or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent; or any other sum as to which [Dorian] is in default, or for any such which [A&R] may expend or be required to expend by reason of [Dorian]'s default … including … any damages or deficiency in the reletting of the demised premises.

*Id.* at 5.

### 6. *Damages against Dorya*

The Guaranty provides that Dorya is liable for:

> [F]ull and prompt: (i) payment of Rent (as defined in the Lease) and all other charges (including … any holdover charges imposed under the Lease and any indemnity obligations under or arising out of the Lease) payable by [Dorian] … under or in any way relating to the Lease (calculated and determined as though all brokerage commissions payable by [A&R] were theretofore or then repayable to [A&R] by [Dorian] in addition to the rents specified in the Lease) accruing through and including the Vacate Date …. [Dorya] shall not be liable to [A&R] for any Rent or other charges under the Lease attributable to periods after the Vacate Date.

Doc. 38-4 at 2. Under the Guaranty, the Vacate Date is defined as:

> [T]he date upon which all of the following conditions have occurred: (a) [Dorian] … vacates the [] Premises and removes all of its property… (including any … alterations or installations …); (b) [Dorian] lawfully surrenders possession of the [] Premises … in the condition and otherwise in the manner required by the Lease …; (c) [Dorian] has delivered all keys to the [] Premises to [A&R]; and (d) [Dorian] has provided [A&R] with at least ninety (90) days' prior written notice of [Dorian's] intention to vacate the [] Premises.

*Id.* If Dorian failed to provide prior written notice, the Vacate Date is "ninety (90) days after the conditions in clauses (a), (b) and (c) … have been satisfied." *Id.* The Guaranty concludes, "[f]or the avoidance of doubt, upon the full satisfaction of the conditions in clauses (a), (b), (c) and (d) …, [Dorya] shall have no liability … for any obligations of [Dorian] arising after the Vacate Date." *Id.* Dorya's liability under the Guaranty is limited to the period prior to the Vacate Date if the Guaranty's conditions were satisfied,

5

and the Court previously determined they were satisfied. Doc. 54 at 18–20. However, A&R argues that all of the Guaranty's conditions were not satisfied. *See* Doc. 62 at 12–18. Specifically, A&R argues that the Lease also required A&R to agree to Dorian's surrender in writing and be signed by A&R—which it was not—so, Dorian's surrender was invalid.[7] *Id.* at 13–14.

The Guaranty also provides that A&R is entitled to recover reasonable attorneys' fees from Dorya for enforcement of the Guaranty:[8]

> [Dorya] hereby covenants to indemnify and save [A&R] harmless from and against any and all losses, costs, expenses [,] and damages, including, without limitation, reasonable attorneys' fees and court costs which may arise by [Dorya's] default hereunder.

Doc. 38-4 at 4.

### B. Procedural History

On July 13, 2020, A&R filed the instant complaint in the Supreme Court of the State of New York, New York County, asserting breach of contract and enforcement of guaranty claims and seeking declaratory judgment. Doc. 1-1. On August 27, 2020, Defendants removed the action to this Court. Doc. 1.

On January 16, 2023, A&R moved for partial summary judgment with respect to (1) Dorian's liability on the claim for breach of contract under the Lease and (2) Dorya's liability on the claim for enforcement of the Guaranty. Doc. 37. A&R also sought summary judgment against Dorian and Dorya with respect to declaratory relief that Dorian defaulted under the Lease and remains liable for the rent under the Lease, plus additional costs, and that Dorya remains liable pursuant to the Guaranty for Dorian's unpaid obligations. *Id.*; Doc. 1-1 at 6–7. Lastly, A&R moved to dismiss the affirmative

---

[7] Article 24 of the Lease states, in relevant part: "No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed in acceptance of a surrender of the demised premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner." Doc. 38-1 at 5.

[8] As previously mentioned, A&R argues that Dorian and Dorya are independently responsible for all of A&R's attorneys fees. Doc. 71 at 13–14.

defenses and counterclaims raised by Defendants. Doc. 37. On September 26, 2023, A&R's motions were granted. Doc. 54. The Court determined that the Lease and Guaranty are unambiguous contracts and that Dorian and Dorya are both liable to A&R for damages under the Lease for breach of contract and the Guaranty for enforcement, respectively. *Id.* In addition, although A&R's motion with respect to enforcing the Guaranty was granted, the Court disagreed with A&R's argument that the Vacate Date should be determined later when assessing damages and decided that that the Vacate Date was July 29, 2020. *Id.* On May 10, 2024, A&R moved for summary judgment with respect to damages recoverable from Dorian and Dorya. Doc. 61.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free School District*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Senno*, 812 F. Supp. 2d at 454 (citing *SCR Joint Venture*, 559 F.3d at 137). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156,

7

164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

### III. DISCUSSION

#### A. Damages Recoverable from Dorian

A&R argues that the total damages recoverable from Dorian, with interest, through September 1, 2024, is $2,719,352.92, which includes credit for the $260,000 security deposit received from Dorian.  Doc. 62 at 22; Doc. 64 at 8–9.  This includes (1) $2,036,857.01 for the rent, (2) $430,411.43 for the interest on the net amount of each payment that was due under the Lease, less the amounts paid by Moroso for the same space ("interest on the rent due"), (3) $290,237.38 for the attorneys' fees, (4) $193,273.75 for the brokerage commission with interest, (5) $14,573.35 for the electrical charges with interest, and (6) $14,000 for the late charges for 47 months.  Doc. 64 at 8.  Although Defendants argue that A&R has "greatly exaggerated the sums that can be awarded as against Dorian," Defendants only specifically object to (1) the attorneys' fees, (2) the brokerage commission incurred on reletting the premises in August 2021 to Moroso, and (3) the electrical charges.[9]  Doc. 69 at 17–18.  The Court will discuss the attorneys' fees, the brokerage commission, the electrical charges, and all other fees in turn.

---

[9] Defendants only object to the electrical charges in the section regarding damages recoverable from Dorya. Doc. 69 at 16–17.  However, the objection as to the electrical charges is equally applicable to Dorian, so the Court will also consider the objection as to damages recoverable from Dorian.

1. *Attorneys' Fees*

A&R is entitled to damages for reasonable attorneys' fees pursuant to Article 19 of the Lease, which states: "If [A&R] ... in connection with any default by [Dorian] in the covenant to pay rent …, makes any expenditures or incurs any obligations for the payment of money, including … reasonable attorneys' fees, in instituting, prosecuting[,] or defending any action or proceeding, and prevails in any such action or proceeding, [then Dorian will reimburse A&R for] such sums so paid[,] or obligations incurred, with interest and costs." Doc. 38-1 at 4. A&R seeks recovery of the full amount of its attorneys' fees—specifically $290,237.38—incurred in pursuing its claim against Dorian *and* against Dorya under the Lease and the Guaranty, respectively. Doc. 64 at 8, 10. However, as Defendants correctly point out, pursuant to the Lease, A&R is only entitled to the attorneys' fees incurred in the enforcement of the Lease from Dorian. *See* Doc. 38-1 at 4. Here, A&R has not separated out the attorneys' fees "between those incurred…for breach of the Lease and those incurred for enforcement of the Guaranty." Doc. 69 at 18. Although A&R is entitled to damages for reasonable attorneys' fees from Dorian, there is a genuine issue of material fact as to which attorneys' fees were incurred due to the enforcement of the Lease. Accordingly, the Court will not award damages for the attorneys' fees until A&R has specifically identified and segregated the attorneys' fees incurred as to the enforcement of the Lease, as opposed to those incurred in connection with the enforcement of the Guaranty.

The $290,237.38 sought by A&R comprise 487.65 hours spent by seven Schlam Stone & Dolan LLP ("SS&D") attorneys, one accountant, and eight paralegals.[10] Doc. 63; *see also* Doc. 63-3. "As a general matter of New York law, ... when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the

---

[10] Although A&R currently requests $290,237.38 for the attorneys' fees, A&R notes that the total fees and disbursements incurred, including work in progress not billed, comes to $292,979.25. Doc. 63 at 5–6. Thus, A&R also notes that there will be additional amounts billed for the reply brief and additional proceedings that may occur and that A&R will address those adjustments to the extent necessary. *Id.* at 6.

prevailing party, the court will order the losing party to pay whatever amounts have been expended ... so long as those amounts are not unreasonable." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987); *see Diamond D Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992). "However, notwithstanding th[is] general proposition ..., the amount to be awarded as 'an attorney's fee is within the discretion of the court.'" *Terra Energy & Resources Technologies, Inc. v. Terralinna Pty. Ltd.*, No. 12-cv-1337 (KNF), 2014 WL 6632937, at *4 (S.D.N.Y. Nov. 24, 2014) (citation omitted). "Courts in this Circuit employ a presumptively reasonable fee standard to determine the amount to award as attorneys' fees, which boils down to what a reasonable, paying client would be willing to pay, given that such party wishes to spend the minimum necessary to litigate the case effectively." *Carco Group., Inc. v. Maconachy*, No. 05-cv-6038 (ARL), 2011 WL 6012426, at *2 (E.D.N.Y. Dec. 1, 2011) (internal quotation marks and citations omitted), *overturned on other grounds*, 718 F.3d 72 (2d Cir. 2013). "Courts are also instructed to look to market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Amaprop Ltd. v. Indiabulls Financial Services Ltd.*, No. 10-cv-1853 (PGG), 2011 WL 1002439, at *6 (S.D.N.Y. Mar. 16, 2011), *aff'd*, 483 F. App'x 634 (2d Cir. 2012) (internal quotation marks and citation omitted).

   A&R argues that SS&D's attorneys' fees are reasonable. Doc. 62 at 10–12. Defendants counter that the determination of the attorneys' fees is "inherently a factual issue" and that once A&R identifies the fees specifically associated with the breach of the Lease, then "Defendants are entitled to contest the reasonableness of those expenses." Doc. 69 at 16. However, Defendants do not raise any factual dispute about the reasonableness of SS&D's attorneys' fees. Doc. 71 at 14; *see* Doc. 69 at 15–18. Accordingly, there is no genuine issue of material fact, and the Court finds—like other courts in this District—that the billing rates for SS&D are reasonable. *See Tackney v. W.B. Imico Lexington Fee LLC*, 10-cv-2734, 2735 (PGG), 2015 WL 1190096 at *5

(S.D.N.Y. Mar. 16, 2015) ("[T]he rates [SS&D] charged for its attorneys are reasonable."); *see also Rai v. WB Imico Lexington Fee, LLC*, 09-cv-9586 (PGG), 2017 WL 1215004 (S.D.N.Y Mar. 31, 2017), *motion to vacate den.,* 2017 WL 4350567 (S.D.N.Y. June 28, 2017), *aff'd*, 719 F. App'x 90 (2d Cir. 2018) ("[B]illing rates [for SS&D] at issue here are within the range of rates that have been approved by courts in this District.").

2. *Brokerage Commission*

A&R is entitled to damages for the brokerage commission on reletting the Premises to Moroso in August 2021 pursuant to Article 18 of the Lease, which states: "In computing such liquidated damages there shall be added to the said deficiency such expenses as [A&R] may incur in connection with [re]letting, such as…brokerage."[11] Doc. 38-1 at 4. Accordingly, since there exists no genuine issue of material fact with respect to payment of the brokerage commission, A&R is awarded damages for the brokerage commission from Dorian.

3. *Electrical Charges*

A&R is entitled to damages for the electrical charges pursuant to Article 47 of the Lease, which states: "[Dorian] shall pay to [A&R], as additional rent, the sum of (a) the actual out-of-pocket cost of [A&R] to supply electric current to the Demised Premises plus (b) ten (10%) percent of [A&R]'s actual cost." Doc. 38-1 at 16. Although it is undisputed by the parties that A&R is entitled to the electrical charges, Defendants dispute the electrical charges for the period from January 2020 through July 2020.[12] Doc. 69 at 16–17. Effectively, Defendants dispute liability for electrical charges from the

---

[11] Although A&R incorrectly cites to Article 19, which governs reasonable attorneys' fees, in its declaration for support for its entitlement to damages, Article 18 of the Lease governs payment of brokerage commissions, which A&R correctly cites to in its memorandum in support of the motion for summary judgment. Doc. 64 ¶ 12; Doc. 62 at 6; *see also* Doc. 38-1 at 4.

[12] Defendants do not dispute that A&R is entitled to damages for the electrical charges from August 2020 through July 2021, after which Moroso became responsible for paying the electrical charges. Doc. 69 at 16–17.

Commencement Date through the Vacate Date.  Defendants specifically argue that A&R fails to "explain how any electrical charges could have accrued as it is undisputed that Dorian never occupied the Premises or made any use of the Premises whatsoever."  Doc. 69 at 16–17.  For proof of the electrical charges for the period from January 2020 through July 2020, A&R submitted an invoice showing the arrearages for the electrical charges in the amount of $5,314.51.  Doc. 64 ¶ 10; Doc. 64-2.  In addition, Ronald Lowinger, an officer and shareholder of A&R, affirmed to the truth of the electrical charges.  Doc. 64.  Thus, there is no genuine issue of material fact regarding the electrical charges from January 2020 through July 2020.  Accordingly, the Court will award damages for the electrical charges from January 2020 through July 2021.

4. *Other Fees*

A&R also seeks damages for (1) $2,036,857.01 for the rent, (2) $430,411.43 for the interest on the rent due, and (3) $14,000 for late charges.  Doc. 64 at 8.  Here, Defendants do not dispute these damages.  Doc. 69 at 17–18.  Thus, the Court finds that A&R has met its burden and that there is no genuine issue of material fact with respect to the issue of damages as to these fees.

\* \* \*

Accordingly, the Court finds that Dorian is liable for the brokerage commission with interest, the electrical charges with interest, the rent, the interest on the rent due, and the late charges.  Dorian is also liable for the attorneys' fees, but additional documentation is required reflecting the attorneys' fees incurred in enforcing the Lease.

**B. Damages Recoverable from Dorya**

1. *Vacate Date*

Although the Court already determined that the Vacate Date is July 29, 2020, A&R continues to dispute that finding.  Doc. 62 at 12–22; *see also* Doc. 69 at 8–14.  A&R argues that "the Court should correct its error that Vacate Date was July 29, 2020" and that that the correct Vacate Date for purposes of damages is August 1, 2021, the

effective date of the lease with Moroso.  Doc. 62 at 18.  Specifically, A&R argues the Guaranty's conditions were not satisfied because A&R needed to accept Dorian's surrender in writing and be signed by A&R, as required by the Lease.  *Id.* at 13–14.  Defendants argue that A&R improperly asks the Court to reconsider its determination of the Vacate Date.  Doc. 69 at 8–10.  The Court agrees with Defendants that A&R's argument is untimely because A&R should have filed a motion for reconsideration fourteen days after this Court's decision.[13]  *See United States v. David*, No. 12-cr-214 (ER), 2024 WL 4054359, at *2 (S.D.N.Y. Sept. 5, 2024) ("Local Criminal Rule 49.1(d) provides that a motion for reconsideration 'shall be filed and served within 14 days' of the order on the original motion.") (citation omitted); *see also Bocoum v. Daimler Trucks North America LLC*, No. 17-cv-7636 (JPC) (BCM), 2023 WL 1466597, at *3 (S.D.N.Y. Feb. 2, 2023) (denying motion for reconsideration as "very untimely" because Defendants only sought leave to file their motion for reconsideration 108 days after the Court's determination).  In addition, A&R offers no explanation as to why it waited seven months to bring what is essentially a motion for reconsideration.  *See* Doc. 62.  Thus, the Vacate Date is July 29, 2020, as previously determined by the Court.  *See* Doc. 54 at 20.

Because the Vacate Date is July 29, 2020, Dorya is only liable for damages up to that date, when Dorya's liability under the Guaranty ended.  *See* Doc. 54 at 18–20.  Accordingly, Dorya's liability for the rent, the interest on the rent due, the electrical charges with interest, and the late charges only apply to charges that were incurred prior to July 29, 2020.

---

[13] Even if the Court were to use the deadline of 28 days for a motion for reconsideration for a final judgment based on Federal Rule of Civil Procedure 59(e), A&R filed the motion for reconsideration approximately 6 months after that deadline.  *See Lasher v. Stavis*, No. 17-cv-6632 (JPO), 2018 WL 6521586, at *1 (S.D.N.Y. Dec. 12, 2018) ("Federal Rule of Civil Procedure 59(e) permits district courts to grant reconsideration of a final judgment, provided any such motion is filed no later than 28 days after the entry of the judgment.") (internal quotation marks and citation omitted).

### 2. *Objections as to Specific Fees*

A&R argues that the total damages recoverable from Dorya, with interest through September 1, 2024, is $1,541,088.60.[14] Doc. 64 at 10.  This includes (1) $743,333.33 for the rent, (2) $295,170.82 for the interest on the rent due, (3) $290,237.38 for the attorneys' fees, (4) $193,273.75 for the brokerage commission with interest, (5) $14,573.35 for the electrical charges with interest, and (6) $4,500 for the late charges for 18 months.[15]  *Id.*  Here, Defendants object to all fees. Doc. 69 at 15–17.  The Court will discuss the attorneys' fees, the brokerage commission, the electrical charges, and all other fees in turn.

#### a. *Attorneys' Fees*

The Guaranty provides that Dorya will indemnify A&R for the attorneys' fees "which may arise by [Dorya's] default hereunder."  Doc. 38-4 at 4.  The Guaranty does not provide indemnification for attorneys' fees incurred in connection with a suit against Dorian, or with the assertion of any rights under the Lease.  *See id.*

An unambiguous contract is to be interpreted based on the "terms expressed in the instrument itself."  *Metropolitan Life Insurance Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d. Cir. 1990).  "[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing."  *Vermont Teddy Bear Co. v. 538 Madison Realty Co.,* 1 N.Y.3d 470, 475 (N.Y. 2004) (internal quotation marks and citation omitted).

The contractual language at issue is clear and unambiguous, and under the Guaranty, A&R is only entitled to recover the attorneys' fees from Dorya incurred in connection with the enforcement of the Guaranty.  *See* Doc. 38-4 at 4.  A&R seeks the same $290,237.38 in the attorneys' fees against Dorian under the Lease *and* against

---

[14] A&R used August 1, 2021 as the Vacate Date, not July 29, 2020, to calculate the total damages.

[15] The total amount when adding the rent, the interest on the rent due, the attorneys' fees, the brokerage commission with interest, the electrical charges with interest, and the late charges is $1,541,099.63, which is a difference of 3 cents from the total provided by A&R.  *See* Doc. 64 at 10, 11.

14

Dorya under the Guaranty. Here, A&R has failed to specifically identify the attorneys' fees incurred by Dorya's default. Accordingly, because there is a genuine issue of material fact as to which attorneys' fees were incurred due to the enforcement of the Guaranty, the Court will not award A&R the attorneys' fees against Dorya until A&R specifically identifies and segregates the attorneys' fees incurred due to Dorya's default, as opposed to those incurred in connection with the enforcement of the Lease. However, as previously discussed, the Court finds that the billing rates for SS&D are reasonable.

    b. *Brokerage Commission*

A&R also seeks $193,273.75 as reimbursement for the brokerage commission incurred by A&R in reletting the Premises in August 2021 to Moroso. Doc. 64 at 10. However, Dorya is not liable for damages after the Guaranty ended. Accordingly, A&R is not entitled to recover damages as for the brokerage fees from Dorya.

    c. *Electrical Charges*

It is undisputed that A&R is entitled to recover damages as to the electrical charges from Dorya. *See* Doc. 38-4 at 2. As previously discussed, there is no genuine issue of material fact as to the electrical charges from January 2020 through July 2020. Accordingly, the Court will award damages for the electrical charges from January 2020 through July 2020.

    d. *Other Fees*

Defendants dispute the amounts calculated for damages for the rent, the late charges, and the interest on all amounts owed under the Guaranty because A&R used August 1, 2021 as the Vacate Date, not July 29, 2020, to calculate these damages. Doc. 69 at 16–17. As previously discussed, the Court determines that Dorya is only liable damages up to the Vacate Date. Accordingly, the Court will award damages as to the rent, the late charges, and the interest on all amounts owed up to July 29, 2020.

*  \*  \**

Accordingly, Dorya is liable for the electrical charges with interest, the rent, the interest on the rent due, and the late charges from January 21, 2020 through July 29, 2020. Dorya is also liable for the attorneys' fees, but additional documentation is required reflecting the attorneys' fees incurred in enforcing the Guaranty. Lastly, Dorya is not liable for the brokerage commission.

## IV. CONCLUSION

For the reasons set forth above, A&R's motion for summary judgment as to damages is GRANTED in part and DENIED in part. The Clerk of Court is respectfully directed to terminate the motion, Doc. 61. A&R is further directed to resubmit its attorneys' fees specifically identifying and segregating the attorneys' fees incurred as to the enforcement of the Lease and those incurred in connection with the enforcement of the Guaranty.

It is SO ORDERED.

Dated:   January 7, 2025
         New York, New York

EDGARDO RAMOS, U.S.D.J.